IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02709-REB-BNB

GIACOMO KRATTER,

Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO, a Colorado corporation d/b/a Centura
Health-Summit Medical Center d/b/a St. Anthony Summit Medical Center,
STEADMAN HAWKINS CLINIC, PROFESSIONAL, LLC, a Colorado limited liability
company,
MARY I. BRYAN, P. A., and
THOMAS R. HACKETT, M.D.,

Defendants.
_____

**AMENDED[1] ORDER**
_____

This matter arises on plaintiff's **Motion and Brief to Strike Certain Causation Opinions of Dr. Sean Nork for Non-Compliance With Fed. R. Civ. P. 26(a)(2)(B)** [Doc. # 135, filed 4/9/2010] (the "Motion to Strike").[2] The Motion to Strike is DENIED.

The plaintiff was a professional snowboarder. On December 15, 2006, he sustained a tibial plateau fracture during a halfpipe competition at Breckenridge, Colorado. He was treated for his injuries by Dr. Thomas Hackett and by Mary Bryan, a physicians assistant, among others.

Following the injury, the plaintiff developed a compartment syndrome. The plaintiff alleges professional negligence because the compartment syndrome was not timely diagnosed or

---

[1]The Order is amended only to correct the date of its entry. The remainder of the Order is identical to Doc. # 184.

[2]The Motion to Strike was referred to me on June 2, 2010.

treated. The plaintiff also alleges that as a result of the delay in treating the compartment syndrome, he has "suffered permanent injury and damages to the anterior and lateral compartments of his right lower leg" resulting in "pain, suffering, disability, disfigurement" and ending his career as a professional snowboarder. Pretrial Order [Doc. # 141] at pp. 2-3.

The case schedule is important in considering the Motion to Strike. The plaintiff disclosed his experts on January 29, 2010; the defendants disclosed their experts and rebuttal experts on February 15, 2010; and the plaintiff disclosed his rebuttal experts on March 1, 2010. The discovery cut-off was on March 15, 2010, except as specifically allowed by my order. The pretrial conference was on April 12, 2010. Trial is set to begin on July 26, 2010.

Defendants Hackett, Bryan, and Steadman Hawkins Clinic endorsed Dr. Sean Nork, an orthopedic surgeon, to render opinions concerning the standard of care, causation, and damages. Id. at p. 31. Dr. Nork issued a written report of his opinions pursuant to Fed. R. Civ. P. 26(a)(2) on February 15, 2010. The report states, in relevant part:

> [T]he compartment syndrome developed sometime shortly before it was diagnosed, and that diagnosis was made in a timely fashion.
>
> . . . . Dr. Hackett and PA Bryan were cognizant of and were looking for signs and symptoms of compartment syndrome. The appropriately documented their findings and timely diagnosed the compartment syndrome in Mr. Katter when it occurred. When the diagnosis was made, timely and appropriate interventions were undertaken.
>
> It [is] my opinion that Dr. Hackett and PA Bryan at all times practiced within accepted standards of care and that no negligent act or failure to act caused Mr. Kratter's compartment syndrome or an sequela from that compartment syndrome. Dr. Hackett and Ms. Bryan's documentation was reasonable and appropriate, as was their care and treatment of Mr. Kratter throughout his hospitalization. . . .

2

Expert Report of Sean E. Nork, M.D. [Doc. # 135-3] ("Nork Opin.") at p. 5.

Dr. Nork was deposed approximately 45 days later, on March 31, 2010. During his deposition, Dr. Nork testified:

> A [by Dr. Nork]: . . .[G]iven [the plaintiff's] final outcome, it makes me believe that he had ongoing muscle injury in that compartment in the days leading up to the 19th, and the acute compartment syndrome was just the final result of that ongoing muscular injury and ongoing muscular ischemia that was occurring over several days.
>
> Q: So, did you reflect that in your report?
>
> A: I think in general, yeah, my report reflects that the diagnosis was made appropriately on the 19th, and that the patient did not have an acute compartment syndrome base upon my review of the notes prior to that.
>
> Q: Okay. Did you ever indicate in your report that you thought that he had ongoing muscle damage over a period of days that then culminated into some sort of a compartment syndrome?
>
> A: I didn't use those words in my report.
>
> Q: No, did you use anything that even suggested that that was your opinion in that report?
>
> MS HARDEN: Object to form.
>
> A: So, I said in my report that the theory that compartment syndrome was ongoing since December 16th is not consistent with the clinical examinations and finding--findings, which I--which I believe. I did not say specifically that in my opinion that the--that the cause of his acute compartment syndrome was ongoing muscle necrosis over two to three days, but I do think that that is what ultimately caused his acute compartment syndrome on the 19th when it was diagnosed.

Deposition of Dr. Sean Nork [Doc. # 135-5] ("Nork Depo.") at p. 91 line 23 through p. 92 line 25. In addition, Dr. Nork testified:

3

> A: I think that the muscular death was likely caused prior to the compartment syndrome that was diagnosed on the 19th. I think there was ongoing muscular ischemia that led up to that point, and the acute compartment syndrome was actually the manifestation of that muscular--of that muscular injury due to ischemia.

Id. at p. 95 lines 9-14.

Approximately 45 days after his deposition, on May 13, 2010, Dr. Nork issued a supplemental report [Doc. # 174-2] ("Nork Supp. Opin."), stating:

> During the week prior to my deposition, I reviewed these [deposition] transcripts, as well as the materials previously provided to me, which was identified in my initial report. I spent a great deal of time reviewing and rereviewing medical records and considering the reports and deposition testimony of Plaintiff's experts.
>
> \* \* \*
>
> However, in my deposition, I elaborated on the fact that while Mr. Kratter did not exhibit signs of compartment syndrome until December 19, Mr. Kratter suffered from muscle ischemia during the December 16-December 19 time frame, which eventually resulted in Mr. Kratter developing increased intracompartmental pressures and other findings consistent with a compartment syndrome. Specifically, Mr. Kratter suffered from reduced blood supply into the anterior compartment or reduced outflow from the compartment due to venous congestion, resulting in progressive muscle death. This eventually culminated in the formation of Mr. Kratter's acute compartment syndrome on December 19.

Id. at p. 2.

The plaintiff moves to exclude the new opinions of Dr. Nork, first stated in his deposition and later contained in his supplemental report, as untimely. The plaintiff relies on Rule 37(c)(1), Fed. R. Civ. P., which provides:

> **Failure to Disclose or Supplement.** If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion or at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

The Tenth Circuit Court of Appeals has articulated the following four factors to be considered in determining whether a failure to disclose is justified or harmless:

> (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).

The plaintiff argues that he has been prejudiced by Dr. Nork's late disclosure because he has been "deprived of the opportunity to rebut this supposed causation theory." In particular, plaintiff's counsel argues:

> Had the undersigned known the Defendants were going to introduce expert testimony asserting that a vascular injury was the true cause of Plaintiff's injuries, she would have endorsed a vascular surgeon to address the issue in rebuttal. Had she known Dr. Nork held such an opinion, she would have asked Dr. Kregor [plaintiff's orthopedic expert] to address that opinion in rebuttal as well.

Motion to Strike ][Doc. # 135] at p. 13.

Although I agree that the plaintiff has suffered prejudice as a result of the late disclosure, I find that any such prejudice can be cured. There is adequate time before the July 29 trial date for the plaintiff to consult a vascular surgeon and to obtain opinions in rebuttal to Dr. Nork's late disclosure. Consequently, the plaintiff may have to and including July 7, 2010, within which to (1) designate a vascular surgeon and (2) supplement Dr. Kregor's rebuttal report to rebut Dr. Nork's late disclosed opinions that muscle ischemia/reduced blood supply/venous congestion led to the compartment syndrome and to provide opposing counsel with all information specified in

5

Fed. R. Civ. P. 26(a)(2) in support of the opinions rebutting Dr. Nork. The plaintiff is also granted leave to supplement the final pretrial order, on or before July 7, 2010, to add a vascular surgeon as a rebuttal expert and to add other information necessary to rebut Dr. Nork's late disclosure.

The plaintiff claims to need to re-depose Dr. Nork. Motion to Strike [Doc. # 135] at p. 13. I disagree. The plaintiff has already deposed Dr. Nork. During that deposition, Dr. Nork disclosed the new opinions about which the plaintiff objects, and plaintiff's counsel inquired about the new opinions. Since then, Dr. Nork has provided his supplemental report which further elaborates on his deposition testimony. The plaintiff is adequately informed about Dr. Nork's opinions to allow him to obtain opinions in rebuttal and to avoid any surprise.

Allowing Dr. Nork to testify as to all of his expressed opinions will not disrupt the trial.

With respect to the issue of bad faith or willfulness, Dr. Nork testified as follows about when he formulated his opinions:

> Q: . . . Well, when did you form that opinion?
>
> A: I had it--I've had it ongoing since I first reviewed the medical records, and I tried to, in my own mind, put together the clinical signs and symptoms that I observed that were documented from multiple sources.

Nork Depo. [Doc. # 135-5] at p. 93 lines 7-11. In addition, his supplemental report indicates that Dr. Nork "spent a great deal of time reviewing and rereviewing medical records" prior to his deposition. From this, it appears that with greater diligence Dr. Nork could have formulated and disclosed all or his opinions in his initial expert report. I do not find any evidence of bad faith or willfulness in connection with the late disclosure, however.

On balance, I find that the exclusion of Dr. Nork's late disclosed opinions is not

6

warranted.

IT IS ORDERED that the Motion to Strike [Doc. # 135] is DENIED.

IT IS FURTHER ORDERED that on or before July 7, 2010, the plaintiff may (1) designate a vascular surgeon and (2) supplement Dr. Kregor's rebuttal report to rebut Dr. Nork's opinions that muscle ischemia/reduced blood supply/venous congestion led to the compartment syndrome and to provide opposing counsel with all information specified in Fed. R. Civ. P. 26(a)(2) in support of the opinions rebutting Dr. Nork. Also on or before July 7, 2010, the plaintiff may file a supplement the final pretrial order adding a vascular surgeon as a rebuttal expert and adding any other information necessary to rebut Dr. Nork's late disclosed opinions.

Dated June 9, 2010.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge