IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02709-REB-BNB

GIACOMO KRATTER,

Plaintiff,

v.

CATHOLIC HEALTH INITIATIVES COLORADO, a Colorado corporation d/b/a Centura
Health-Summit Medical Center d/b/a St. Anthony Summit Medical Center,
STEADMAN HAWKINS CLINIC, PROFESSIONAL, LLC, a Colorado limited liability
company,
MARY I. BRYAN, P. A., and
THOMAS R. HACKETT, M.D.,

Defendants.
_____

**ORDER**
_____

This matter arises on plaintiff's **Motion and Brief to Strike Certain Opinions of Jon Franklin, J.D. for Non-Compliance With Fed. R. Civ. P. 26(a)(2)(B)** [Doc. # 180, filed 6/1/2010] (the "Second Motion to Strike").[1]  The Second Motion to Strike is DENIED.

The plaintiff was a professional snowboarder. On December 15, 2006, he sustained a tibial plateau fracture during a halfpipe competition at Breckenridge, Colorado. Following the injury, the plaintiff developed a compartment syndrome. The plaintiff alleges professional negligence because the compartment syndrome was not timely diagnosed or treated. The plaintiff also alleges that as a result of the delay in treating the compartment syndrome, he has "suffered permanent injury and damages to the anterior and lateral compartments of his right

---

[1]The plaintiff previously moved to strike certain opinions of the defendants' orthopedic surgeon. I denied that motion in an earlier order. Amended Order [Doc. # 191].

lower leg" resulting in "pain, suffering, disability, disfigurement" and ending his career as a professional snowboarder. Pretrial Order [Doc. # 141] at pp. 2-3.

The plaintiff disclosed his experts on January 29, 2010; the defendants disclosed their experts and rebuttal experts on February 15, 2010; and the plaintiff disclosed his rebuttal experts on March 1, 2010. The discovery cut-off was on March 15, 2010, except as specifically allowed by my order. The pretrial conference was on April 12, 2010. Trial is set to begin on July 26, 2010.

The defendants endorsed Jon Franklin, a sports agent, to render opinions concerning the plaintiff's lost earnings potential. Order [Doc. # 112] at p. 3. The plaintiff now seeks to preclude certain opinions expressed by Mr. Franklin in a supplemental report issued on May 20, 2010 [Doc. # 185-7] (the "Supplemental Report"), and to preclude Mr. Franklin from referring to an article about the plaintiff appearing in Method magazine [Doc. # 185-1] (the "Method magazine article"). Specifically, the plaintiff seeks to preclude Mr. Franklin from expressing the following opinion that the plaintiff's marketability for endorsements is limited by his behavior:

> In reviewing the media on Mr. Kratter there were a number of examples of irreverent behavior that could fall into this area. Statements and his stated philosophy of "Lets Party" as "Training kills riders" and others along these lines, while fun, just might cross the line to get mainstreams sponsors thinking twice about an involvement with Giacomo Kratter.
>
> Other statements by Mr. Kratter definitely cross the line. For example in Mr. Kratter's interview posted on January 17th 2007 in Method (defined as Europe's #1 Snowboard magazine and podcast), Mr. Kratter speaks about taking anal virgins and his experience in these areas. Certainly comments that would be seen as outside the mainstream.

Second Motion to Strike [Doc. # 180] at p. 6.

2

The Tenth Circuit Court of Appeals has articulated the following four factors to be considered in determining whether a failure to disclose is justified or harmless:

> (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness.

Woodworker's Supply, Inc. v. Principal Mutual Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999).

### 1. Prejudice or Surprise

The plaintiff is neither prejudiced nor surprised by Mr. Franklin's Supplemental Report. To the contrary, the plaintiff expected that the defendants would offer such an opinion, and the plaintiff has obtained a rebuttal expert to address it. In particular, the plaintiff's sports agency expert's rebuttal report states:

> Mr. Augustine states "Mr. Kratter projected the image of being a playboy and a partier in his young twenties. It is my opinion that this image is unattractive to mainstream corporate sponsors . . . as athletes age into their 30's and beyond, the 'bad boy' image diminishes in appeal with respect to the athlete's marketability." I am confounded by this opinion as the snowboarding scene itself is regarded as a party environment, one must only visit the annual XGames to see many of the competitors acting as both playboys and partiers. Snowboarding grew out of counter-culture and, although it has become mainstream, it is because its athletes are not cookie cutter walking cliches that they are so popular. There is a storied history of sports stars being either playboys or partiers or bad-boys and receiving significant corporate support including, by way of example, Bode Miller, David Beckham, John McEnroe, Charles Barkley, Joe Namath, and Mickey Mantle.

Rebuttal Report of Lowell Taub [Doc. # 185-6].[2]

The plaintiff was aware that the Method magazine article upon which Mr. Franklin now relies was within his files at the time of Mr. Franklin's deposition. Notwithstanding that knowledge, the plaintiff failed to inquire about it and refused to allow Mr. Franklin to testify about it. Second Motion for Sanctions [Doc. # 180] at ¶8; Deposition of Jon Franklin [Doc. # 185-4] (the "Franklin Depo.") at p. 129 line 12 through p. 132 line 14.

### 2. Ability to Cure

Although the defendants offer to make Mr. Franklin available for a follow-up deposition, Response [Doc. # 185] at p.2 n.1, I find that in the absence of prejudice or surprise there is no need for any further discovery. The plaintiff expressly and intentionally declined during Mr. Franklin's deposition to inquire about the Method magazine article or even to let Mr. Franklin explain its importance, and the plaintiff did so at his peril. In addition, Mr. Franklin's Supplemental Report adequately discloses his opinion to avoid any surprise, and Mr. Taub's rebuttal report fully addresses and responds to the opinion.

### 3. Disruption to the Trial

Allowing Mr. Franklin to testify as to all of his expressed opinions will not disrupt the trial.

### 4. Bad Faith

I do not find that the defendants acted in bad faith in connection with Mr. Franklin's Supplemental Report.

---

[2] Although the rebuttal report addressed an opinion expressed by defendants' expert Leigh Augustine, who was stricken, and not Mr. Franklin, it is clear that the plaintiff was aware of the opinion about which he now complains and is prepared to rebut it.

After applying the Woodworker's factors to the issue raised in the Second Motion to Strike, I find that there is no reason to exclude Mr. Franklin's opinion or to preclude him from referring to the Method magazine article.

IT IS ORDERED that the Second Motion to Strike [Doc. # 180] is DENIED.

Dated June 17, 2010

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge