IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn

Civil Action No. 08-cv-02709-REB-BNB

GIACOMO KRATTER,

    Plaintiff,

v.

DEFENDANT CATHOLIC HEALTH INITIATIVES COLORADO, doing business as
CENTURA HEALTH-SUMMIT MEDICAL CENTER and ST. ANTHONY SUMMIT
MEDICAL CENTER, a Colorado corporation,
STEADMAN HAWKINS CLINIC, PROFESSIONAL, LLC, a Colorado limited liability
company,
MARY I. BRYAN, and
THOMAS R. HACKETT, M.C.,

    Defendants.

## ORDER DENYING CHIC'S FED.R.EVID. 702 MOTION
## TO EXCLUDE EXPERT OPINION OF DARIN WESSELINK

**Blackburn, J.**

The matter before me is **CHIC's Fed.R.Evid. 702 Motion To Exclude Expert Opinion of Darin Wesselink** [#111], filed March 12, 2010. I deny the motion.

### I. JURISDICTION

I have jurisdiction over this case pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

### II. STANDARD OF REVIEW

Defendant Catholic Health Initiatives Colorado, d/b/a St. Anthony Summit Medical Center ("CHIC"), seeks to exclude the testimony of plaintiff's expert witness on standards of nursing care, Darin Wesselink. Rule 702 of the Federal Rules of Evidence, which governs the admissibility of expert witness testimony, provides:

> If scientific, technical, or other specialized knowledge will
> assist the trier of fact to understand the evidence or to
> determine a fact in issue, a witness qualified as an expert by
> knowledge, skill, experience, training, or education, may
> testify thereto in the form of an opinion or otherwise, if
> (1) the testimony is based upon sufficient facts or data, (2)
> the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and
> methods reliably to the facts of the case.

**FED.R.EVID.** 702. As interpreted by the Supreme Court, Rule 702 requires that an expert's testimony be both reliable, in that the witness is qualified to testify regarding the subject, and relevant, in that it will assist the trier in determining a fact in issue. ***Daubert v. Merrell Dow Pharmaceuticals, Inc.***, 509 U.S. 579, 589-92, 113 S.Ct. 2786, 2795-96, 125 L.Ed.2d 469 (1993); ***Truck Insurance Exchange v. MagneTek, Inc.***, 360 F.3d 1206, 1210 (10th Cir. 2004). The Supreme Court has described the court's role in weighing expert opinions against these standards as that of a "gatekeeper." **See Kumho Tire Company, Ltd. v. Carmichael**, 526 U.S. 137, 147, 119 S.Ct. 1167, 1174, 142 L.Ed.2d 248 (1999).

Under ***Daubert*** and its progeny, an expert opinion is reliable if it is based on scientific knowledge. "The adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." ***Daubert***, 113 S.Ct. at 2795. In short, the touchstone of reliability is "whether the reasoning or methodology underlying the testimony is scientifically valid." ***Id***. at 2796; ***see also Truck Insurance Exchange***, 360 F.3d at 1210. The party proffering the expert opinion must demonstrate both that the expert has employed a method that is scientifically sound and that the opinion is "based

on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation." **Goebel v. Denver and Rio Grande Western Railroad Co.**, 346 F.3d 987, 991 (10th Cir. 2003) (quoting **Gomex v. Martin Marietta Corp.**, 50 F.3d 1511, 1519 (10th Cir. 1995)).

Rule 702 demands also that the expert's opinion be relevant, that is, that the testimony "fit" the facts of the case. **Daubert**, 113 S.Ct. at 2796; **In re Breast Implant Litigation**, 11 F.Supp.2d 1217, 1223 (D. Colo. 1998). "'[T]he standard for fit is higher than bare relevance.'" **In re Breast Implant Litigation**, 11 F.Supp.2d at 1223 (quoting **In re Paoli Railroad Yard PCB Litigation**, 35 F.3d 717, 745 (3rd Cir. 1994), **cert. denied**, 115 S.Ct. 1253 (1995)). The proffered evidence must speak clearly and directly to an issue in dispute in the case. **Id.**

Guided by these principles, the court has broad discretion in determining whether expert testimony is sufficiently reliable and relevant to be admissible. **Truck Insurance Exchange**, 360 F.3d at 1210; **Smith v. Ingersoll-Rand Co.**, 214 F.3d 1235, 1243 (10th Cir. 2000). The overarching purpose of the court's inquiry is "to make certain that the expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." **Goebel**, 346 F.3d at 992 (quoting **Kumho Tire Company**, 119 S.Ct. at 1176).

### III.  ANALYSIS

On December 15, 2006, plaintiff, a professional snowboarder, was participating in the Grand Prix Super Pipe competition in Breckenridge, Colorado. Attempting to execute a 1080, he landed on his right leg in an extended position, sustaining a

3

comminuted and crushed lateral tibial plateau fracture. After examination at the Breckenridge Clinic by defendants Dr. Thomas Hackett and Mary Bryan, P.A., plaintiff was transferred to St. Anthony Summit Medical Center. Following surgery, plaintiff developed compartment syndrome, a known risk associated with his particular type of fracture, which required an emergent fasciotomy. As a result, plaintiff suffered a loss of muscle in the anterior and lateral compartments of his right lower leg, ending his snowboarding career and resulting in pain and permanent disability and disfigurement. In this lawsuit, plaintiff maintains that defendants' failure to timely diagnose compartment syndrome caused his injuries.

Of particular relevance to the present motion, CHIC is sought to be held vicariously liable for the alleged deficiencies of its nursing staff in failing to properly document signs and symptoms consistent with compartment syndrome. In support of that proposition, plaintiff has proffered the testimony of nurse Darin Wesselink. CHIC challenges as improper Wesselink's testimony that CHIC nurses breached the standard of care by (1) failing to detect that plaintiff's signs and symptoms were indicative of compartment syndrome; (2) specifically with respect to nurse Mary Gage, failing to advocate for plaintiff by allowing Dr. Hackett to convince her, against her own judgment, that plaintiff did not have compartment syndrome; and (3) failing to follow the chain of command when plaintiff's condition continued to deteriorate in spite of efforts to control his pain and address his other symptoms. CHIC maintains that in so testifying, Wesselink is offering an opinion on medical causation beyond his qualifications as a nurse.

As I recently held in another case, on which CHIC relies, "registered nurses and nurse practitioners are not competent to testify regarding medical causation in a medical malpractice case." **Gordon v. Sunrise Senior Living Services, Inc.**, 2009 WL 3698527 at *3 (D. Colo. Nov. 15, 2009) (Blackburn, J.) (footnote omitted). However, CHIC apparently neglected to read further in that same paragraph of the opinion, which discusses the statutory definition of a "nursing diagnosis." **See id.** To reiterate here, the Colorado Nurse Practices Act defines the term "diagnosing" to "mean[ ] the use of professional nursing knowledge and skills in the identification of, and discrimination between, physical and psychological signs or symptoms to arrive at a conclusion that a condition exists for which nursing care is indicated or for which referral to appropriate medical or community resources is required." §12-38-103(5), C.R.S.

Wesselink's testimony here tracks that definition and, thus, is not improper. He suggests that CHIC's nursing staff fell below the professional standard of care when they failed to detect the signs and symptoms of compartment syndrome. This is the essence of a nursing diagnosis, specifically contemplated as being within the realm of a nurse's professional responsibilities under the Colorado Nurse Practices Act. CHIC's objections to the other aspects of Wesselink's testimony are premised on this same misapprehension and fail for the same reason. Wesselink's testimony establishes that a nurse has a duty to "notif[y] the physician of concerns and attempt[] to obtain further orders" and that "[i]f the orders received do not stop the deterioration of the patient's medical condition, the nurse will initiate the chain of command." (Plf. Resp. App., Exh. 8 at 5.) This is not an intrusion into the realm of medical diagnosis, but rather a

5

continuation of the nurse's duty to monitor signs and symptoms and determine whether further nursing or other care is required. *See* §12-38-103(5), C.R.S.. These arguments, therefore, do not warrant exclusion of Wesselink's testimony.

CHIC's remaining arguments are even less persuasive. It maintains that all alleged failures to properly document plaintiff's course of treatment, alterations of the medical record, and other nursing deficiencies noted by Wesselink that predated the development of compartment syndrome are irrelevant and, thus, should be excluded. This contention fails for at least two reasons. First, given the significant dispute in this lawsuit as to when plaintiff actually developed compartment syndrome, the precise date is a moving target. If I were to accept CHIC's theory of relevance, the proper exclusion date could not be determined until after the jury returns its verdicts. Clearly, that course of action is untenable. Second, and more to the point, these alleged failures are not, in fact, irrelevant at all. They provide background and context for plaintiff's allegations regarding the level of care he received in connection with his injuries. The jury is entitled to conclude that a pattern of failures to properly document plaintiff's medical condition as well as outright alterations of the records make it more likely that such lapses continued with respect to the diagnosis and treatment of his compartment syndrome. **FED.R.EVID.** 401.

Finally, CHIC contends that Wesselink should not be permitted to testify that CHIC's nursing care fell below the professional standard of care in failing to promptly notify Dr. Hackett of plaintiff's inability to dorsi- and plantar-flex his foot on December 17, 2006, because any such testimony is speculative. CHIC's theory is that because

6

Dr. Hackett, after being notified of this symptom by a physical therapist, some fourteen hours later, did not conclude that a fasciotomy was warranted, the failure to warn earlier could not have caused plaintiff's injuries. This argument is itself speculative, assuming as it does that an earlier recognition of this symptom would not have counseled any different plan of care than that which was implemented. Indeed, it cannot be known what would have occurred had plaintiff's condition been earlier recognized – the fourteen hours that elapsed between the time these symptoms were first recognized and the time Dr. Hackett was notified of them may have been critical to the ultimate outcome. Those issues, however, go to the weight of Wesselink's opinion, not its admissibility, and, therefore, offer no basis for exclusion of his testimony in that regard.

**THEREFORE, IT IS ORDERED** that **CHIC's Fed.R.Evid. 702 Motion To Exclude Expert Opinion of Darin Wesselink** [#111], filed March 12, 2010, is **DENIED**.

Dated June 30, 2010, at Denver, Colorado.

BY THE COURT:

Robert E. Blackburn
United States District Judge